UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRITTNEY JOHNSON                                    CIVIL ACTION

VERSUS                                              NO: 20-478

FOOT LOCKER STORES, INC.                            SECTION: "A" (4)

## ORDER AND REASONS

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 30)** filed by Defendant, Foot Locker Stores, Inc. ("Foot Locker"). Plaintiff, Brittney Johnson, opposes the motion. The motion, submitted for consideration on May 26, 2021, is before the Court on the briefs without oral argument.

Brittney Johnson filed this lawsuit against her former employer, Foot Locker, alleging gender-based harassment and retaliation under Title VII. Foot Locker now moves for summary judgment on each of Plaintiff's claims.[1] For the reasons that follow, the motion is granted.

### I. Background

Plaintiff, a female, was employed by Foot Locker for over 10 years; her employment was terminated on July 26, 2019. At the time of her termination Plaintiff was store manager of the Foot Locker location at 732 Canal Street in New Orleans. During her employment she had received no write-ups or other disciplinary actions. In fact, Plaintiff had been promoted rather

---

[1] Plaintiff only addressed the retaliation claim as part of her opposition thereby abandoning the hostile work environment claim. While the Court does not address the substance of the hostile work environment claim given that no opposition was raised in support of it, the Court notes that the harassment that Plaintiff complains about was not sufficiently severe nor pervasive enough to have altered a term or condition of her employment, and therefore is not actionable under Title VII. Moreover, none of the harassment that Plaintiff identified was gender-related.

1

steadily throughout her time at Foot Locker. For reasons not apparent, a series of problems began in the spring of 2019.

Both sides identify the start of the problems with an individual named Jarryd Green, who was the store manager for the Kids Foot Locker located next to Plaintiff's store on Canal Street. Although Green had worked for Plaintiff as an assistant manager in the past, he presumably no longer reported to her once he was promoted to the store manager position next door.[2] For this reason, the mutual animosity between Plaintiff and Green, and Plaintiff's involvement in the following events involving Green and the Kids Foot Locker—events that purportedly led to her termination—are perplexing and have not been explained by either party.

In March 2019 Plaintiff learned from Green that her assistant manager (Plaintiff was off work at the time) had closed the store early without authorization to do so. Green was upset about this because celebrity rap artist Kodak Black had come to Foot Locker (Plaintiff's store) wanting to shop but the store was closed. Green, who was eager to please Black, went next door and demanded that Plaintiff's assistant manager reopen the store so that Black could shop. Black spent a significant amount of money in the store and bought gifts for the store's employees; he also gave Green a cash gratuity for getting the store to reopen. Plaintiff contends that she reported all of these infractions to her superiors.

Another incident involving Green occurred in April 2019 when one of Green's employees found a wallet in the Kids Foot Locker store that contained a significant amount of cash. Plaintiff told Green to lock the wallet in a safe because the owner-customer was sure to return for it.

---

[2] Neither party addressed whether Plaintiff continued to have any supervisory responsibilities with respect to Green, and if not, why she and Green were not able to work completely independent of each other given that they managed separate stores.

Green later confessed to Plaintiff that he stole some of the money from the wallet. Plaintiff contends that she reported the incident, including the theft, to her superiors.

Plaintiff contends that Green began to harass her after she reported the foregoing incidents involving Green to management. Things came to a head with Green when his mother came to Plaintiff's store, allegedly at Green's behest, and assaulted her. The police were called because of the physical altercation between the two women, and Plaintiff ultimately obtained a restraining order against Green's mother. On the same day, Johnson's uncle allegedly went to the Kids Foot Locker looking for Green and he did so in a fighting manner. It is the Court's understanding that it was the incident with Green's mother that triggered an investigation by the Fair Employment Practice ("FEP") manager of Foot Locker into the incidents between Plaintiff and Green, and the focus of the investigation according to Foot Locker, was Plaintiff's unprofessional conduct. The FEP case file notations, made by a Ms. Edna Ubervil, indicate that both Green and Johnson were communicating with her about the incidents between them.

While the FEP investigation was proceeding, yet another incident occurred on June 12, 2019, when Kids Foot Locker employee, Ms. Brielle Gibson (a minor at the time), accused Plaintiff of throwing a shoe at her. Brielle reported this to Ms. Ubervil but Brielle later recanted her story. Plaintiff believed at the time that Green had put Brielle up to it in retaliation for the charges that were brought against his mother.

Foot Locker contends that it was during FEP's investigation into the concerns raised by both Johnson and Green that numerous policy violations by Johnson were discovered, and it was those violations that led to her termination. Two of the violations pertained to the incidents involving Green (the Black gratuity and the theft of cash) insofar as FEP was persuaded that Plaintiff had not properly reported those incidents in accordance with company policy, and to the

3

extent that she had reported them, she had omitted significant aspects of the incidents. Plaintiff was allegedly terminated for not reporting that Green had taken a cash gratuity from Kodak Black and that Green had taken some of the cash from the wallet that he found.[3]

Plaintiff was terminated by the district manager, Mr. Owen Campbell, who was not the decision-maker on the firing decision. Owen told her that the reason for the termination was failure to report a theft (the Green incident above involving the lost wallet), failure to report a gratuity (the Green incident above involving Black), and allowing a non-associate into the back room (an incident related to the Brielle Gibson shoe incident above). Owen knew no other details pertaining to the termination.

Foot Locker does not deny that in conjunction with the FEP investigation Plaintiff complained about harassment, bullying, and mistreatment by Green, Sharon Hinton, and Brielle Gibson. Plaintiff alleges that these employees slandered her by spreading false rumors that she padded her store's inventory and that she had an affair with her supervisor. Plaintiff's retaliation claim is grounded on the contention that Foot Locker terminated her employment because she complained about these employees and their harassing behavior toward her.

No trial date is set at this time. (Rec. Doc. 29, Minute Entry 3/31/2021).

## II.     Discussion

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v.*

---

[3] It is unclear whether Green, the party who had actually committed the offenses, was also terminated.

*Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

Title VII's anti-retaliation provision states in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

Title VII claims of unlawful retaliation based on circumstantial evidence are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Vargas v. McHugh*, 630 Fed. Appx. 213, 216 (5th Cir. 2015) (per curiam). First the plaintiff must establish a prima facie case of retaliation by showing that 1) she participated in an activity protected under the statute; 2) her employer took an adverse employment action against her; and 3) a causal connection exists between the protected activity and the adverse action. *Feist v. La. Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)). If the plaintiff makes a prima facie showing of retaliation, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. *Id.* (quoting *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007)). Finally, the burden shifts back to the plaintiff to prove that the employer's proffered reasons are a pretext for retaliation. *Id.* The employee meets this burden by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive. *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)).

The Supreme Court's *Nassar* decision, cited *supra*, clarifies that a plaintiff asserting a Title VII retaliation claim must meet a higher standard of causation than a plaintiff claiming Title VII discrimination. *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (quoting *Nassar*, 133 S. Ct. at 2534). Thus, mere proof that retaliation was a "motivating factor" for an adverse employment action will not suffice. Rather, the plaintiff must establish that his protected activity was a "but for" cause of the alleged adverse action by the employer. *Id.* In order to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Feist*, 730 F.3d at 454 (quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996)).

6

Foot Locker took an adverse employment action against Plaintiff when it terminated her. And while Foot Locker does not concede that Plaintiff engaged in protected activity, Foot Locker devotes most of its motion for summary judgment to challenging the causation prong of Plaintiff's prima facie case; then beyond the prima facie case Foot Locker argues that Plaintiff cannot create an issue of fact as to pretext.

Having studied the submissions by both parties, the Court is persuaded that Plaintiff's case fails because this case involves no evidence whatsoever of gender-related discrimination, nor any evidence that Plaintiff ever believed or perceived that she was being subjected to discrimination (workplace harassment) based on gender. Thus, while Plaintiff did complain to Foot Locker about mistreatment at the hands of Green, Hinton, and Gibson, those complaints never alluded to harassment related to any trait protected by Title VII, specifically gender. Therefore, even if the Court assumes that Foot Locker terminated Plaintiff for complaining about the abuse from Green, Hinton, and Gibson, her termination would not be actionable under federal law because none of the alleged abuse pertained to her gender, and Plaintiff never suggested that it did. And for this reason, Plaintiff cannot satisfy even a prima facie case of Title VII retaliation, much less create an issue of fact on pretext.

While all three prongs of the prima facie case for Title VII retaliation must be satisfied, evidence that the plaintiff participated in an activity protected under the statute is the crucial hook to bringing the case within the purview of Title VII. While it might seem unfair for an employer to terminate an employee who complains about a co-worker's petty, antagonistic behavior, Title VII does not provide redress for unfairness or injustice unless it is tied to a trait protected under federal law.

Under Title VII's antiretaliation provision, protected activity can consist of either 1) opposing any practice made unlawful under Title VII, or 2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) (quoting 42 U.S.C. § 2000e-3(a)). The first option is known as "the opposition clause"; the second is known as 'the participation clause." *Id.*

The participation clause is not implicated in this case leaving the opposition clause as the only possibility.[4] The opposition clause requires opposition of *a practice made unlawful by Title VII. Id.* at 240 (citing 42 U.S.C. § 2000e-3(a)). The employee need not prove that the practice she complained of was actually unlawful so long as she reasonably believed that the employment practice was unlawful.[5] *Id.* (citing *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130 (5th Cir. Unit A 1981)).

While the emails of record that demonstrate that Plaintiff did complain about harassment and bullying by Green, Hinton, and Gibson, she never indicated to Foot Locker that any of the mistreatment that she was complaining about was discriminatory, *i.e.*, based on her gender, or that it might even be discriminatory. In fact, Plaintiff believed that all of the harassment was instigated by Green in retaliation for Plaintiff pressing charges against his mother. Plaintiff has never articulated how her complaints about Green implicated a status protected under Title VII or how Foot locker would have possibly construed her complaints as being related to gender

---

[4] The FEP investigation that led to Plaintiff's termination was not an investigation under Title VII because again, Plaintiff never raised the issue of discrimination with her employer.

[5] To be clear, Plaintiff's case of retaliation does not fail because she cannot prove that the harassment was severe or pervasive enough to have actually been unlawful under Title VII, it fails, as explained below, because neither the contemporaneous evidence (emails during the relevant period) nor her after-the-fact testimony (deposition and declaration) establish that she ever believed, whether reasonably or unreasonably, that the harassment she complained about was related to her gender.

8

discrimination. Simply, Plaintiff's complaints to Foot Locker had no gender discriminatory element. And while the only relevant events for purposes of a retaliation claim are those leading up to the termination, it is clear that even after-the-fact Plaintiff was never convinced that Green, Gibson, and Hinton harassed her because she was female. (Rec. Doc. 30-3 at 60, Plaintiff's deposition at 226). Plaintiff's evidence fails to demonstrate that her complaints to Foot Locker constitute opposition to a practice made unlawful under Title VII. Plaintiff cannot establish a prima facie case of retaliation under Title VII. And she likewise cannot create an issue of fact as to pretext.

In sum, because this case does not involve gender-related harassment, *i.e.*, gender discrimination, or pre-termination complaints about gender-related harassment, or complaints about anything that implicates Title VII, it matters not whether Foot Locker's reasons for terminating Plaintiff were pretextual or even retaliatory for her complaints about Green, Hinton, and Gibson. Title VII offers no redress for a plaintiff who is terminated for pretextual reasons; relief is only available to those who can prove (or at the summary judgment state create an issue of fact) that the reasons offered were a pretext *for unlawful discrimination* and that's where Plaintiff's case fails. Because the record is devoid of any evidence of gender discrimination or any evidence that Plaintiff ever complained about gender-related discrimination, Plaintiff cannot create an issue of fact so as to avoid summary judgment.[6]

Accordingly, and for the foregoing reasons;

---

[6] The Court notes that Foot Locker has argued that it cannot be held liable in this Title VII case because it never employed Plaintiff, the proper entity being Foot Locker Retail, Inc. Because Foot Locker never identities who specifically in which corporate organization made the final decision to terminate Plaintiff (the Court only found a recommendation to terminate from Karla Vasquez, the FEP manager) the Court would not have granted relief based on this argument. And if Plaintiff's retaliation case could have survived summary judgment, the Court would have allowed her to amend her complaint to bring in the proper defendant. But that issue is now moot.

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 30)** filed by Defendant, Foot Locker Stores, Inc. is **GRANTED**. Plaintiff's complaint is dismissed with prejudice.

July 6, 2021

                                            JUDGE JAY C. ZAINEY
                                         UNITED STATES DISTRICT JUDGE